**Gary L. COSTLOW, Appellant,**

v.

**UNITED STATES of America.**

**No. 76–1659.**

United States Court of Appeals, Third Circuit.

Argued Jan. 14, 1977.

Decided March 22, 1977.

David W. Marston, U. S. Atty., Walter S. Batty, Jr., Asst. U. S. Atty., Chief, Appellate Section, Aram K. Jerrehian, Jr., Robert E. Slota, Murphy and Slota, Bryn Mawr, Pa., for appellant.

William J. McGettigan, Asst. U. S. Atty., Philadelphia, Pa., for the United States.

Before GIBBONS and GARTH, Circuit Judges, and COHEN,* District Judge.

## OPINION OF THE COURT

GIBBONS, Circuit Judge.

In this suit under the Federal Tort Claims Act [1] plaintiff Gary L. Costlow appeals from an order granting the government's motion for summary judgment. Since the case was inappropriate for summary judgment, we reverse.

Costlow sustained severe permanent injury from burns of the face, arms and upper

---

* Mitchell H. Cohen, United States District Judge for the District of New Jersey, sitting by designation.

1. 28 U.S.C. § 2671 *et seq.*

torso in an automobile accident which occurred on the Schuylkill Expressway in Conshohocken, Pennsylvania. Costlow was a passenger in an automobile which was struck from behind when it slowed down to avoid an overturned truck obstructing the highway. The overturned truck was carrying United States mail. Contending that the truck had negligently been left on the expressway so as to obstruct the extremely busy expressway traffic for over four and a half hours, and that the obstruction resulted in his accident, Costlow timely filed an administrative claim for his injuries with the United States Postal Service. When the claim was denied he instituted this lawsuit. The complaint alleges:

3. On December 11, 1974, in a public highway known as Interstate Route 76, in Conshohocken, Pennsylvania, defendant, by its agents, acting within the course and scope of their employment, negligently operated a motor vehicle so that it overturned and blocked one lane of traffic, thereby causing other vehicles to stop.

4. Immediately thereafter, at said time and place, the defendant, by its agents acting within the course and scope of their employment, negligently maintained the overturned vehicle so that a dangerous condition was caused upon the highway.

The government answered:

Defendant specifically denies that it or any of its agents, servants, workmen or employees was involved in the accident in any manner. Rather, the vehicle complained of in Paragraphs 3 and 4 of the Complaint was a Star Route vehicle owned and operated by an independent contractor, Waite, Inc., its agents, servants, workman or employees.

Thus the Complaint alleged two theories of negligence, negligently operating the vehicle, and negligently maintaining it on the highway after it overturned. The government denied that its agents were involved in either of the alleged incidents.

Costlow, upon receiving the government's answer, served two interrogatories. The first sought information about the relationship between the United States and Waite, Inc., and was obviously designed to lead to information which might establish that although the overturned truck was not owned by the Postal Service, it nevertheless exercised such control over the truck driver that he should be considered an agent of the United States. Such information would, of course, be relevant to Costlow's first theory of negligence. The second interrogatory sought "the names, addresses, business addresses, employers and job classifications of all persons who were involved, or in any way concerned or connected with the overturned trailer of Waite, Inc. on December 11, 1974, or the handling, processing or removal of the same or its contents from Interstate 76." Such information would be relevant to Costlow's second theory of negligence, since he contends, and the government has admitted, that Postal Service employees came to the scene of the accident to remove and safeguard the mail contained in the overturned truck.

Without answering the interrogatories the government filed a motion for summary judgment, supported by the single affidavit of Robert H. Wieman, Director, Transportation Services Office, United States Postal Service. The Wieman affidavit identifies and annexes as an exhibit the contract between the Postal Service and Waite, Inc. for the carriage of mail between Philadelphia and Pittsburgh. It also says that Wieman received a report of the December 11, 1974 accident which states that the driver, Joseph Faulisi, was at the time of the accident employed by the contractor, Waite, Inc. Wieman's affidavit says nothing about the Postal Service employees who came to the scene to remove and safeguard the mail. Thus Costlow's second theory of negligence was not even put in issue by the government's moving papers.

In response to the motion for summary judgment Costlow filed an affidavit. It states:

2. Plaintiff believes, and therefore avers, that the defendant had, or assumed the duty of removing the overturned mail truck of the alleged private contractor

from the highway known as Interstate 76.

This allegation plainly reiterated Costlow's second theory of negligence, as to which Wieman's affidavit was silent. Costlow's affidavit also states:

4. The plaintiff has initiated discovery to ascertain the identity of the persons involved in the administration of the contract which is attached to the defendant's motion.

5. Until the requested discovery is completed, the plaintiff cannot truly appraise its position and prospective opposition to the application for judgment.

Thus, as to the first theory, to which Wieman's affidavit spoke, Costlow responded in the manner expressly authorized by Fed.R. Civ.P. 56(f).[2]

Without hearing argument, the district court on March 31, 1976 granted summary judgment. In its memorandum the court reasoned:

It is readily apparent [from the text of the government's contract with Waite, Inc.] that the driver of the overturned vehicle was the employee of an independent contractor and not a person acting on behalf of a federal agency within the meaning of the Federal Tort Claims Act

. . . .

Nor can we perceive any duty or obligation on the part of the government to remove the truck from the highway.

No mention is made in the memorandum of the government's concession in an answer, filed subsequent to its motion for summary judgment, to Costlow's interrogatory that a number of Postal Service employees were "concerned or connected with the overturned trailer . . . or the handling,

processing or removal of same or its contents from Interstate 76."

■ Since the government's moving papers never even addressed Costlow's second theory of negligence, that Postal Employees dispatched to the scene negligently maintained the truck on the highway while removing or safeguarding the mail, and since the government's answer to Costlow's interrogatory concedes that Postal Employees were at the scene for that purpose, it was error to grant summary judgment on this issue. Thus the judgment appealed from must be reversed.

■ The government urges that even if summary judgment was improper on Costlow's second theory, summary judgment with respect to the negligence of the truck driver was proper. We cannot agree. The crucial issue is whether the Postal Service exercised such control over the mail truck and its driver, despite the contract, that the driver was actually an employee of the federal government within the meaning of the Federal Tort Claims Act rather than an employee of an independent contractor.[3] The district court decided that issue solely by examining the written contract. Assuming, without deciding, that in the absence of any other evidence relating to control the contract would be dispositive, it cannot be said at this stage of the proceedings that there is no other evidence. Cases discussing the issue of control discuss it as a question of fact.[4]

■ Costlow contends that despite the contract the Postal Service in fact exercised control over the activities of the driver. He responded to the government's motion for summary judgment by saying that he need-

---

2. Fed.R.Civ.P. 56(f) states:

(f) When Affidavits are Unavailable. Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

3. See, e. g., United States v. Orleans, 425 U.S. 807, 813–816, 96 S.Ct. 1971, 48 L.Ed.2d 390 (1976); Logue v. United States, 412 U.S. 521, 528, 93 S.Ct. 2215, 37 L.Ed.2d 121 (1973).

4. See, e. g., Logue, supra, 412 U.S. at 532, n.8, 93 S.Ct. 2215; Witt v. United States, 462 F.2d 1261 (2d Cir. 1972); United States v. N. A. Dergerstrom, 408 F.2d 1130, 1132 (9th Cir. 1969); Close v. United States, 130 U.S.App. D.C. 125, 397 F.2d 686 (1968).

ed additional discovery in order to justify his opposition. Rule 56(f)[5] contemplates such a response, and we have said that where the facts are in possession of the moving party a continuance of a motion for summary judgment for purposes of discovery should be granted almost as a matter of course. *Ward v. United States,* 471 F.2d 667, 670–71 (3d Cir. 1972). We do not suggest that after discovery the status of Waite, Inc. and its driver will still be so uncertain as to preclude summary judgment.[6] But by acting on the motion for summary judgment without argument, and without reference to what might be developed in discovery, which was being diligently pursued, the court erred.

The judgment appealed from will be reversed.

---

5.  See n.2 *supra.*

6.  *See, e. g., Tunder v. United States,* 522 F.2d 913, 915 (10th Cir. 1975); *Fisher v. United States,* 356 F.2d 706 (6th Cir.), *cert. denied,* 385 U.S. 819, 87 S.Ct. 41, 17 L.Ed.2d 57 (1966).