

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-6-2004

# ITT Ind Inc v. Wastecorp Inc

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-1309

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"ITT Ind Inc v. Wastecorp Inc" (2004). *2004 Decisions.* Paper 1019.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/1019

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 03-1309

ITT INDUSTRIES, INC.

v.

WASTECORP. INC; WASTECORP
INTERNATIONAL INVESTMENTS INC.,
Appellants

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
D.C. Civil No. 99-cv-01548
District Judge:  The Honorable John W. Bissell, Chief Judge

Argued November 20, 2003

Before: RENDELL, BARRY, and MAGILL,[*] <u>Circuit Judges</u>

(Filed:  February 6, 2004)

---

   [*] The Honorable Frank J. Magill, Senior Circuit Judge, United States Court of Appeals for the Eighth Circuit, sitting by designation.

Lawrence Rosenthal, Esq. (Argued)
Glenn M. Mitchell, Esq.
Stroock, Stroock & Lavan
180 Maiden Lane
New York, NY  10038

Attorneys for Appellants


Norman H. Zivin, Esq. (Argued)
Wendy E. Miller, Esq.
Cooper & Dunham
1185 Avenue of the Americas
New York,  NY 10036

Attorneys for Appellee

---

OPINION

---


BARRY, <u>Circuit Judge</u>

This is a tale of one company's efforts to extend the terms of its contract with another company.  Wastecorp Inc. ("Wastecorp") obtained a license from ITT Industries, Inc. ("ITT") to use the MARLOW trademark for a term of four years.  There is no question that the integrated contract between the parties stipulated a four-year term.  Nor is there any question that Wastecorp, despite the protestations of ITT, continued to use the MARLOW mark after the expiration of the four-year term.   Intuitively, this case is easily resolved:  Wastecorp, it appears, willfully breached its contract with ITT.  Despite this intuitive clarity, however, a number of issues relating to trademark law muddy the waters.

2

Following our examination of those issues, we are convinced that our intuition was correct and that the District Court's orders should be affirmed.

## I. BACKGROUND

ITT is a multi-billion dollar, diversified, international conglomerate providing products and services in numerous industries, including Defense, Electronics, and Fluid Technologies. This case involves the MARLOW trademark, which ITT and its predecessors have used in association with industrial pumps since 1935. In the 1990s, ITT reorganized its industrial pumps division and divested some lines of pumps, including the plunger pumps division of MARLOW.

Wastecorp is a manufacturer of industrial pumps with annual sales of approximately $1 million.[1] In 1993, Wastecorp purchased all of the assets of the MARLOW plunger pump division. In addition, Wastecorp entered into a License Agreement ("Agreement") that limited its use of the MARLOW mark to a four-year term. The Agreement did not address renewal terms; rather, it explicitly stated that "[u]pon any such expiration or termination, LICENSEE agrees to discontinue immediately all use of the Trademark[.]"

After the Agreement expired in April 1997, Wastecorp continued to use the MARLOW mark. ITT sent Wastecorp cease and desist letters in June and December of

_____

[1]Wastecorp has, since the initiation of this litigation, filed for bankruptcy.

1997, and again in February and March of 1999.[2] On April 5, 1999, ITT filed a complaint asserting claims for trademark infringement, unfair competition, trademark dilution, and breach of contract. Wastecorp answered, asserting affirmative defenses including promissory estoppel and fraud in the inducement in response to the contract claims, and counterclaimed for breach of contract based on ITT's alleged failure to support Wastecorp against third-party infringers.

Wastecorp, relying on the statements of its CEO, Walter Soja, alleged that ITT had promised to renew the Agreement and that had it not been for that promise, Wastecorp would not have entered into the Agreement. Wastecorp's own evidence, however, cuts against this allegation: its 1994 prospectus stated that licensing rights to the MARLOW mark expired after a four-year term, and that this time frame would allow the company to transition from selling "Marlow Plunger Pumps" to "Wastecorp Plunger Pumps." Further, Mr. Soja stated that the issue of renewability was "purposely omitted" from the written contract.

Wastecorp also proffered two defenses to the infringement claims raised by ITT, and renews them on appeal. First, Wastecorp alleges that ITT abandoned its rights in the MARLOW mark with regard to industrial pumps. Second, it alleges that ITT fraudulently obtained its April 1998 renewal of the MARLOW trademark registration. Both of these

---

[2]It appears that after the December 1997 letter ITT was under the impression that Wastecorp had ceased use of the MARLOW mark, but learned of Wastecorp's continued use at a 1998 trade conference, prompting the 1999 letters.

4

defenses rest on an assertion that no use of the MARLOW mark on industrial or plunger pumps can be attributed to ITT between the expiration of the Agreement in April of 1997 and the renewal of the MARLOW registration in April of 1998.

On July 12, 2001, the District Court denied Wastecorp's F.R.Civ.P. 56(f) motion requesting additional discovery to determine whether ITT had used the MARLOW mark in connection with plunger pumps after April 1997. At the same time, the Court granted summary judgment in favor of ITT on all counts. With regard to Wastecorp's assertion that ITT had fraudulently renewed the MARLOW mark, the District Court found that the last date ITT could claim sales of plunger pumps was April 1997, but that it had continued to use the MARLOW mark on other types of pumps. The Court also found that "plaintiff's declaration [on the trademark renewal registration] does appear to be in error." *ITT Indus., Inc. v. Wastecorp Inc.*, No. 99-1548, slip op. at 11 (D.N.J. July 12, 2001). Nonetheless, the Court concluded that Wastecorp failed to "establish that . . . [ITT's] renewal application was fraudulent, so as to warrant cancellation of the entire registration." *Id.* at 12.

In addressing Wastecorp's abandonment defense, the District Court noted that ITT had sent a letter to its distributors in January 1998 regarding the transfer of certain MARLOW pumps to a different manufacturing facility. The Court also noted advertisements in trade magazines for pumps bearing the MARLOW mark in June and September 1998 in addition to a print advertisement in June 1999. Trade publications

from trade shows in September 2000, December 2000, April 2001, and May 2001 also include ITT advertisements bearing the MARLOW mark on industrial pumps.

The parties then engaged in discovery concerning damages. Wastecorp again sought information regarding ITT's use of the MARLOW mark, asserting that ITT's non-use constituted an equitable factor that the District Court was obligated to consider. ITT objected and moved for summary judgment, seeking Wastecorp's profits as damages. *See* 15 U.S.C. § 1117(a). The District Court denied Wastecorp's Rule 56(f) motion, granted ITT's motion for summary judgment, and awarded profits in the amount of $631,570 to ITT, an amount subsequently reduced to $365,789. The Court also awarded ITT $238,333.87 in attorneys' fees. Finally, the District Court entered a permanent injunction, restricting Wastecorp's ability to use the MARLOW mark.

## II. DISCUSSION

The District Court had jurisdiction over ITT's Lanham Act claims based upon 28 U.S.C. §§ 1331 and 1338, and 15 U.S.C. § 1051 *et seq.* The District Court had supplemental jurisdiction over the contract claims based upon 28 U.S.C. § 1367. We have jurisdiction under 28 U.S.C. § 1291.

All of the issues decided by the District Court were on motions for summary judgment. Review of the District Court's various grant of summary judgment is *de novo*. *Goosby v. Johnson & Johnson Med., Inc.*, 228 F.3d 313, 318 (3d Cir. 2000). In deciding

6

a motion for summary judgment, the "test is whether there is a genuine issue of material fact and, if not, whether the moving party is entitled to judgment as a matter of law." *Medical Protective Co. v. Watkins*, 198 F.3d 100, 103 (3d Cir. 1999). Facts must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). To avoid summary judgment, the nonmoving party must produce more than a "mere scintilla" of evidence to demonstrate a genuine issue of material fact. *Big Apple BMW, Inc. v. BMW of North America, Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992). Merely showing "that there is some metaphysical doubt as to the material fact" is insufficient. *Matsushita*, 475 U.S. at 586.

## A.    Contract Dispute

We exercise plenary review over the District Court's application of contract law. *Coltec Indus. v. Hobgood*, 280 F.3d 262, 269 (3d Cir. 2002).

The Agreement between ITT and Wastecorp set forth explicit terms regarding its expiration. There is no dispute, and the terms are surely clear, that the license was for a term of four years. There is also no dispute that Wastecorp continued to use the MARLOW trademark after the four-year term expired. It would seem that there could be little dispute that Wastecorp knowingly breached its contract with ITT. Wastecorp, however, alleges an oral agreement at the time of contract formation for renewal of the license upon expiration.

7

The Agreement included a merger clause. Under New York law, which the parties agree governs this matter, "if a contract recites that all of the parties' agreements are merged in the written document, parol evidence is not admissible to vary, or permit escape from, the terms of the integrated contract." *Mfrs. Hanover Trust Co. v. Yanakas*, 7 F.3d 310, 315 (2d Cir. 1993) (citing *Fogelson v. Rackfay Construction Co.*, 300 N.Y. 334, 340, 90 N.E.2d 881, 884 (1950)). Thus, absent any affirmative defenses by Wastecorp, contract liability is clear.

Wastecorp, however, alleges that ITT fraudulently induced it to enter into the Agreement by promising to renew the license upon expiration of the contractual four-year term. Because "fraud vitiates every transaction," parol evidence may be admitted to show fraud, even where the contract contains a merger clause. *Bridger v. Goldsmith*, 143 N.Y. 424, 428, 38 N.E. 458, 459 (1894). *See also Mfrs. Hanover Trust Co.*, 7 F.3d at 315 (citing *Sabo v. Delman*, 3 N.Y.2d 155, 161-62, 143 N.E.2d 906, 908-09 (1957) and *Bridger v. Goldsmith*, 143 N.Y. at 428, 38 N.E. at 459).

"When, however, the contract states that a contracting party disclaims the existence of or reliance upon specified representations, that party will not be allowed to claim that he was defrauded into entering the contract in reliance on those representations." *Mfrs. Hanover Trust Co.*, 7 F.3d at 315 (citing *Citibank, N.A. v. Plapinger*, 66 N.Y.2d 90, 94-95, 485 N.E.2d 974, 976 (1985) and *Danann Realty Corp. v. Harris*, 5 N.Y.2d 317, 320, 157 N.E.2d 597, 598-99 (1959)). The Agreement between

ITT and Wastecorp explicitly and unambiguously states that the license to use the MARLOW trademark expired after a four-year term.

The Agreement does not preclude renewal of the license, or even address that possibility, which is what Wastecorp alleges was promised. Such a promise, however, even if it was made, is of the same character and substance as the terms of the license's expiration, about which the Agreement is clear. Indeed, Mr. Soja admitted that a renewal term was "purposely omitted" from the Agreement. Both parties signed onto an integrated agreement specifying a four year licensing term; renewal terms are part and parcel of such an agreement, and their absence from a valid, integrated writing is telling. Wastecorp cannot after formation collaterally attack the Agreement's explicit terms.

Even if ITT promised to renew the license, but refused to put it in writing, Wastecorp's defense fails. As the New York Court of Appeals long ago explained:

> It may be assumed that promises of future action that are a part of the contract between the parties, to be binding upon them, must be stated in the contract. An oral restrictive covenant, or any oral promise to do or refrain from doing something affecting the property about which a written contract is made and executed between the parties, will not be enforced, not because the parties should not fulfill their promises and their legal and moral obligations, but because the covenants and agreements being promissory and contractual in their nature and a part of, or collateral to a principal contract, the entire agreement between the parties must be deemed to have been merged in the writing. The value of a writing would be very seriously impaired if the rule mentioned in regard to including the entire agreement in such writing is not enforced.

*Adams v. Gillig*, 199 N.Y. 314, 318, 92 N.E. 670, 671 (1910). *See also Central Sav. Bank v. Amted Realty Co.*, 83 N.Y.S.2d 678, 680 (N.Y. App. Div. 1948) (denying mortgagee's

allegation of mortgagor's fraudulent promise that mortgage payment period would be extended and stating, "Mere promissory statements as to what will be done in the future are not actionable.") (citations omitted).

**B.      Lanham Act**

"We exercise plenary review over the District Court's legal conclusions concerning the Lanham Act." *Checkpoint Sys. v. Check Point Software Techs., Inc.*, 269 F.3d 270, 279 (3d Cir. 2001).  To prove trademark infringement and unfair competition under the Lanham Act, ITT must prove that: (1) it owns the MARLOW mark; (2) the mark is valid and legally protectable; and (3) Wastecorp's unauthorized use of the mark is likely to create confusion.  15 U.S.C. § 1114(1)(a);[3] *Commerce Nat'l Ins. Servs., Inc. v. Commerce Ins. Agency, Inc.,* 214 F.3d 432, 437 (3d Cir. 2000).

Typically, the third prong–likelihood of confusion–is the disputed element in an infringement claim.  Here, however, the third prong may well be established simply

---

[3]The Lanham Act provides in relevant part:

> Any person who shall, without the consent of the registrant . . . use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive . . . shall be liable in a civil action by the registrant[.]

15 U.S.C. § 1114(1)(a).

10

because we are confronted with the use of an identical mark by a former licensee. "The unauthorized use of a mark by a former licensee presents a particular danger of confusion to the public. It has been described as 'a fraud on the public, since they are led to think that the ex-licensee is still connected with the licensor.'" *Villanova Univ. v. Villanova Alumni Educ. Found.*, 123 F. Supp. 2d 293, 309 (E.D. Pa. 2000) (quoting J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 25:31 ("McCarthy")). "It is axiomatic that use of a licensed mark by an ex-licensee after termination of the license creates a likelihood of confusion, infringing and unfairly competing with the rights of the trademark owner." *Ford Motor Co. v. A.C. Car Group Ltd.*, 2002 U.S. Dist. LEXIS 7188 *6 (E.D. Mi. March 4, 2002). "[M]any courts [including the Third Circuit] have held that continued trademark use by one whose trademark license has been canceled satisfies the likelihood of confusion test and constitutes trademark infringement." *Burger King Corp. v. Mason,* 710 F.2d 1480 (11th Cir. 1983). *See, e.g., U.S. Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185, 1190 (6th Cir. 1997) ("proof of continued, unauthorized use of an original trademark by one whose license to use the mark has been terminated is sufficient to establish 'likelihood of confusion'"); *United States Jaycees v. Philadelphia Jaycees*, 639 F.2d 134, 143 (3d Cir.1981) ("We perceive that there is great likelihood of confusion when an infringer uses the exact trademark [of its former licensor].").

Rather than emphasize the third prong of the infringement test, Wastecorp challenges the ownership and validity of the MARLOW mark. ITT, on the other hand,

11

asserts that its rights in the MARLOW mark are incontestible.[4]  If ITT is correct, "[i]f the mark at issue is federally registered and has become incontestible, then validity, legal protectability, and ownership are proved[,]" and, as a matter of law, ITT prevails on its infringement claim.  *Commerce Nat'l Ins. Servs., Inc.,* 214 F.3d at 438.  Thus, the crux of this case is ITT's claim to the MARLOW mark.

Wastecorp seeks to undermine ITT's claim to the MARLOW mark alleging first, that ITT abandoned the mark and, second, that ITT's failure to use the mark in connection with plunger pumps renders ITT's trademark renewal registration invalid because fraudulently obtained.  *See* 15 U.S.C. §§ 1115(b)(1)-(2).[5]

---

[4]"A trademark becomes incontestable after the owner files affidavits stating that the mark has been registered, that it has been in continuous use for five consecutive years, and that there is no pending proceeding and there has been no adverse decision concerning the registrant's ownership or right to registration." *Fisons Horticulture, Inc. v. Vigoro Indus.*, 30 F.3d 466, 472 n.7 (3d Cir. 1994); *See* 15 U.S.C. §§ 1058, 1065.

[5]Incontestability "shall be subject to the following defenses or defects: (1) That the registration or the incontestable right to use the mark was obtained fraudulently; or (2) That the mark has been abandoned by the registrant[.]"  15 U.S.C. §§ 1115(b)(1)-(2).

**(1)    Abandonment**[6]

As the Supreme Court long ago explained:

> To establish the defence [sic] of abandonment it is necessary to show not only acts indicating a practical abandonment, but an actual intent to abandon. Acts which unexplained would be sufficient to establish an abandonment may be answered by showing that there never was an intention to give up and relinquish the right claimed.

*Saxlehner v. Eisner & Mendelson Co.*, 179 U.S. 19, 31 (1900).  As we have more recently noted, "abandonment, being in the nature of a forfeiture, must be strictly proved." *Philadelphia Jaycees*, 639 F.2d at 139.  *See also Saratoga Vichy Spring Co. v. Lehman*, 625 F.2d 1037, 1044 (2d Cir. 1980) (recognizing that because it constitutes the forfeiture of a property right, abandonment must be proven by clear and convincing evidence).

---

[6]The Lanham Act defines abandonment as follows:

> A mark shall be deemed to be "abandoned" if either of the following occurs:
>
> (1) When its use has been discontinued with intent not to resume such use. Intent not to resume may be inferred from circumstances. Nonuse for 3 consecutive years shall be prima facie evidence of abandonment. "Use" of a mark means the bona fide use of such mark made in the ordinary course of trade, and not made merely to reserve a right in a mark.
>
> (2) When any course of conduct of the owner, including acts of omission as well as commission, causes the mark to become the generic name for the goods or services on or in connection with which it is used or otherwise to lose its significance as a mark. Purchaser motivation shall not be a test for determining abandonment under this paragraph.

15 U.S.C. § 1127.

13

Consideration of the evidence, drawing all inferences in favor of Wastecorp, supports the District Court's conclusion that Wastecorp failed to produce evidence giving rise to a disputed material fact regarding whether ITT abandoned the MARLOW mark. Wastecorp's production and sale of plunger pumps bearing the MARLOW mark through April 1997 (the close of the licensing period) inheres to ITT. To establish presumptive abandonment by ITT, Wastecorp must raise a question of material fact regarding ITT's "nonuse [of the MARLOW mark] for three consecutive years." 15 U.S.C. § 1127. Thus, the question becomes whether ITT used the MARLOW mark after April of 1997. Wastecorp alleges that ITT has not used the mark because there is no direct evidence of the sale of a pump bearing the MARLOW mark by ITT after that date.

Wastecorp contends that ITT has consolidated its industrial pump operations, abandoned the MARLOW mark, and now sells industrial pumps under the GOULDS mark. It relies on a January 1998 letter from ITT to its distributors, informing them that production of MARLOW industrial pumps was being transferred to the GOULDS pump manufacturing facility, and the fact that ITT now sells pumps under the GOULDS mark that were formerly sold only under the MARLOW mark. Wastecorp also relies on ITT's response to an interrogatory that "ITT Industries has not directly sold any MARLOW brand plunger pumps since April 1993."

Wastecorp's evidence, however, is ambiguous at best. ITT, in its interrogatory

14

response, admitted to no direct sales, of plunger pumps, but nothing more than that.[7] ITT asserts that the sales during the four-year licensing term of its licensee, Wastecorp, inhered to it, and Wastecorp does not dispute this undoubtedly correct assertion.[8] ITT's admission of no direct sales of one type of industrial pump does not necessarily, or in fact, indicate nonuse of the MARLOW mark.

As for the January 1998 letter, that letter is addressed to distributors of MARLOW products, including distributors of industrial pumps, and references industrial pumps by way of a MARLOW catalog number, designating a MARLOW product contact person. The letter is, at the very least, strong circumstantial evidence of ITT's "bona fide use of [the MARLOW mark] made in the ordinary course of trade." 15 U.S.C. § 1127. Moreover, the fact that ITT sold industrial pumps under the GOULDS mark does not mean that identical pumps were not sold bearing the MARLOW mark; indeed, the letter seems to suggests that this is so. Finally, the record contains ITT print advertisements from June and September 1998 for MARLOW industrial pumps, which constitute

---

[7]ITT specifically denied Wastecorp's assertion that the MARLOW mark "was not in use" by ITT and its admission of no direct sales pertained only to plunger pumps, not all industrial pumps.

[8]*See, e.g., E. I. Dupont Nemours & Co. v. Celanese Corp.*, 167 F.2d 484, 489 (C.C.P.A. 1948) ("a proper license agreement is valid and does not indicate abandonment on the part of the owner of the mark"). The parties, however, do dispute whether the sales of MARLOW pumps by Wastecorp *after* the expiration of the licensing term inhere to ITT. We need not reach that issue.

additional strong circumstantial evidence of ITT's bona fide use of the mark.[9]

Because ITT's rights in the mark are incontestible, valid ownership is presumed; the burden is on Wastecorp to raise an issue of material fact. It has not done so.[10] Merely showing that there may be "some metaphysical doubt" as to a material fact is not enough for Wastecorp to survive summary judgment on its abandonment claim. *Matsushita*, 475 U.S. at 586.

### (2)   Fraudulent Renewal

In response to ITT's assertion of incontestible rights in the MARLOW mark, Wastecorp raises a defense of fraud based on 15 U.S.C. § 1115(b)(1). ITT's MARLOW trademark registration expired in September 1998; it filed a timely renewal that stated that the MARLOW mark was "still in use in interstate commerce on the following goods recited in the registration–namely, pumps including . . . plunger pumps."[11] Wastecorp contends that ITT was not using the mark in commerce on plunger pumps at the time of the renewal. This allegedly fraudulent representation to the U.S. Patent & Trademark

---

[9]While advertisements do not constitute use in commerce, they are circumstantial evidence of use. *See*, *e.g.*, *Purolator, Inc. v. EFRA Distributors, Inc.*, 687 F.2d 554, 559 (1st Cir. 1982) ("Interstate advertising might be additional evidence of use of the mark in commerce").

[10]Wastecorp asserts that it would have been able to produce evidence of ITT's nonuse if the District Court had not halted discovery. As explained below, the District Court did not abuse its discretion in denying Wastecorp's Rule 56(f) motion.

[11]ITT's renewal registration was dated April 24, 1998, and filed December 9, 1998.

16

Office ("USPTO"), Wastecorp argues, nullifies ITT's claim to the MARLOW mark, and hence, any infringement claim against Wastecorp.

### (a)    April 1997 to September 1998

ITT's MARLOW registration expired on September 8, 1998.  The Agreement between Wastecorp and ITT, however, expired in April 1997.  There are no allegations that the original MARLOW registration or the renewals prior to 1998 were fraudulently obtained.  Accordingly, the alleged fraudulent renewal in 1998 cannot serve as a defense for Wastecorp's use of the MARLOW mark preceding the expiration of the registration in September 1998.  Through September 1998, ITT's interest in the MARLOW mark was incontestible.  Because, as discussed above, Wastecorp's abandonment defense fails, and because Wastecorp has not alleged fraudulent renewal regarding the registrations prior to September 1998, Wastecorp has no defense to its infringement between April 1997 and September 1998.

### (b)    September 1998 to Present

Because ITT's interest in the MARLOW mark has become incontestible, we begin with the presumptions that ITT owns the mark, and that use of the mark has been continuous.  *Commerce Nat'l Ins. Servs., Inc.,* 214 F.3d at 438.  These presumptions may of course be rebutted.  The burden is on Wastecorp to create at the very least an issue of

17

material fact, a burden it has not carried. Wastecorp cannot merely assert that ITT's renewal registration was fraudulent and thereby escape summary judgment.

It is certainly true that ITT admitted to no direct sales of plunger pumps. But it is also true that ITT denied Wastecorp's allegation that it was not using the MARLOW mark within the meaning of the Lanham Act. ITT contends, and we agree, that there are other legitimate uses of the mark; indeed, even without more, the license granted to Wastecorp proves as much.[12] Wastecorp's reliance solely on the conclusory allegation of its CEO, Mr. Soja, that ITT did not engage in any bonafide use of the mark on plunger pumps after 1997 does not raise an issue of material fact.

The District Court noted ITT's admission that it had made no direct sales of

---

[12]While sales are the typical and clearest evidence, they are not the *sine qua non* of use in commerce. *See, e.g., New England Duplicating Co. v. Mendes*, 190 F.2d 415, 417-8 (1st Cir. 1951) ("to hold that a sale or sales are the sine qua non of a use sufficient to amount to an appropriation would be to read an unwarranted limitation into the statute, for so construed registration would have to be denied to any manufacturer who adopted a mark to distinguish or identify his product, and perhaps applied it thereon for years, if he should in practice lease his goods rather than sell them").

While we do not suggest that Wastecorp's *infringing* use, after expiration of its license, inheres to ITT within the meaning of the Lanham Act, we do not reach that issue. Rather, we point to the license between Wastecorp and ITT as a reminder that licensing does, indeed, constitute use within the meaning of the Lanham Act. With this in mind, we return to the fact that ITT's interest is incontestible, with the concomitant presumption that ITT was using the mark. Wastecorp's mere protestations to the contrary are not sufficient to rebut that presumption. That Wastecorp, had it been more diligent in pursuing discovery, might have or even could have produced evidence creating an issue of material fact is of no consequence; as we explain below, the District Court did not abuse its discretion in halting discovery. At bottom, the evidence simply does not overcome the presumption in ITT's favor.

18

plunger pumps bearing the MARLOW mark since 1993. Based on this admission, the Court concluded that ITT's claim in the renewal registration that the MARLOW mark was in use on plunger pumps "does appear to be in error." *ITT Indus., Inc.*, No. 99-1548 at 11. We cannot, however, conclude that the District Court intended this equivocal statement to mean any more than that ITT had not made any direct sales, and that direct sales were the only method sufficient to satisfy the "use" requirements within the meaning of the Lanham Act. As we have already explained, however, there are other activities – licensing, to name only one – that constitute use.

The District Court concluded that Wastecorp had "failed to establish that plaintiff's representation in the 1998 registration renewal application was fraudulent, so as to warrant cancellation of the entire registration." *Id*. at 11-12. Because we conclude that Wastecorp has not overcome the presumption that ITT's use of the mark has been continuous, we need not reach the issue of whether ITT's statement in the renewal registration, if false, constituted fraud; Wastecorp has not produced sufficient evidence to overcome the presumption that ITT's statement was true. Where, as here, the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).


**C.** **Discovery Issues**


19

The District Court denied Wastecorp's F.R.Civ.P. 56(f) motion requesting additional time to conduct discovery into ITT's use of the mark after April 1997. We review a denial of a Rule 56(f) motion for abuse of discretion. *Bradley v. United States*, 299 F.3d 197, 206 (3d Cir. 2002).

ITT filed this action in April 1999. When ITT sought summary judgment on March 27, 2001, Wastecorp had not taken a single deposition. Wastecorp attempted to justify its dilatory discovery practice by pointing to settlement negotiations with ITT (that temporarily suspended discovery) and to the heart attack of its attorney in February 2001. But even most generously construing the time constraints imposed by these obstacles, there was a loss of only five or six months out of the two years of open discovery.

We have explained that "where the facts are in possession of the moving party a continuance of a motion for summary judgment for purposes of discovery should be granted almost as a matter of course." *Costlow v. United States*, 552 F.2d 560, 564 (3d Cir. 1977) (citing *Ward v. United States*, 471 F.2d 667, 670-71 (3d Cir. 1972)). Even in *Costlow*, however, we premised our conclusion on an assumption that "discovery . . . was being diligently pursued[.]" *Costlow*, 552 F.2d at 564.

The District Court did not abuse its discretion in refusing to excuse Wastecorp's lengthy delays and lack of diligence in conducting discovery. *See, e.g., Lunderstadt v. Colafella*, 885 F.2d 66, 71-72 (3d Cir. 1989) (concluding that the district court had not abused its discretion in determining that "more discovery by plaintiffs was unwarranted

primarily because they already had a substantial amount of time to conduct such discovery and had failed to do so").[13]

### D.    Damages

After finding Wastecorp liable for infringement, the District Court granted ITT's motion for summary judgment for damages under the Lanham Act. "We review a trial court's award of statutory damages for abuse of discretion." *Shields v. Zuccarini*, 254 F.3d 476, 481 (3d Cir. 2001).

The Lanham Act authorizes a court to award the defendant's profits. ITT proved Wastecorp's net sales of $3,625,552. The District Court considered the deductions allowed under the Lanham Act and proved by Wastecorp, and arrived at a damage award of $365,789, approximately ten percent of net sales. There were no issues of material fact which precluded the District Court's calculation of damages on summary judgment, and the Court did not abuse its discretion in calculating those damages.

---

[13]We note that the District Court would have been justified in denying Wastecorp's motion on other grounds as well. Rule 56(f) requires a party seeking additional discovery to "submit an affidavit specifying . . . what particular information is sought; how, if uncovered, it would preclude summary judgment; and why it has not previously been obtained." *Dowling v. Philadelphia*, 855 F.2d 136, 139-140 (3d Cir. 1988). Wastecorp failed to submit an affidavit with its Rule 56(f) motion. "We have made clear that, in all but the most exceptional cases, failure to comply with Rule 56(f) is fatal to a claim of insufficient discovery on appeal." *Bradley*, 299 F.3d at 207 (citations omitted).

### E.    Injunction

The District Court a permanently enjoined Wastecorp's use of the MARLOW mark except for narrow allowances to sell parts for MARLOW plunger pumps, and to indicate the history of MARLOW plunger pumps. "An injunction is an exercise of equitable power. For an appellate court to modify or vacate an injunction there must be a showing of abuse of discretion." *Philadelphia Jaycees*, 639 F.2d at 141 (citing *Tennessee Valley Auth. v. Hill,* 437 U.S. 153, 193-95 (1978)).

The District Court did not abuse its discretion. It recognized, and the injunction accommodates, the right of Wastecorp to explain its purchase of the MARLOW plunger pump division from ITT. The injunction also accommodates Wastecorp's right to sell replacement parts for MARLOW pumps. Wastecorp has no other claim to the MARLOW mark; the injunction entered by the District Court merely limits Wastecorp to the valid exercise of its rights.

## III.  CONCLUSION

For the reasons explained above, the order of the District Court will be affirmed.