NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-4475
_____

WILLIAM E. BROWN,

Appellant

v.

UNITED STATES STEEL CORPORATION;
UNITED STATES STEEL AND CARNEGIE PENSION FUND
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 2-10-cv-00780)
Magistrate Judge:  Honorable Robert C Mitchell
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
October 25, 2011

Before:  FISHER, VANASKIE and ROTH, *Circuit Judges*.

(Filed: November 17, 2011)
_____

OPINION OF THE COURT
_____

FISHER, *Circuit Judge*.

William E. Brown ("Brown") appeals the District Court's conversion of the

Defendants' motion to dismiss to a motion for summary judgment and its subsequent

granting of the summary judgment motion.  For the reasons stated below, we will affirm.

I.

We write principally for the parties, who are familiar with the factual context and legal history of this case. Therefore, we will set forth only those facts necessary to our analysis.

Brown began working for United States Steel Corporation ("U.S. Steel") on August 5, 1968. On October 22, 1981, he suffered a work-related injury in a motor vehicle accident, which prevented him from returning to work. At the time, he was enrolled in U.S. Steel's self-insured workers' compensation program, which covered his medical bills and a portion of his lost wages in accordance with Pennsylvania workers' compensation law. At the time of his injury and thereafter, Brown's health insurance benefits were administered by the United States Steel and Carnegie Pension Fund ("the Pension Fund") and paid for by U.S. Steel as part of a self-insured employer group health plan.

In 1986, Brown filed an Application for Retirement Benefits to the Pension Fund under the class of "permanent incapacity" retirement. U.S. Steel and the Pension Fund (the "Defendants") argue that this is indicative of Brown's retirement from the company. Since July 1986, Brown has received monthly pension payments in the amount of $317.76 (which was later increased to $367.75 due to collective bargaining agreements) with a supplement of $400 per month until he attained the age of sixty-two or became eligible for Social Security Disability benefits as provided in Section 3.4 of the 1980

Pension Agreement. Accordingly, his active employee insurance coverage ceased on June 30, 1986, and he enrolled in the company-paid hospital and physicians' services benefits under the Program of Hospital-Medical Benefits for Eligible Pensioners and Surviving Spouses. In 1987, Brown was awarded Social Security Disability benefits retroactive to 1984.

On June 26, 1989, the Pension Fund received a report from the Social Security Administration ("SSA") indicating that Brown was entitled to Medicare Part A coverage as of July 1, 1984. Brown alleges that the U.S. Steel benefits office counseled him to apply for Medicare Part B coverage in 1989 and then again in 1992 after his first application was denied. His second application for Medicare Part B coverage was approved. Between 1992 and 2004, Medicare paid approximately $750,000 in medical expenses incurred by Brown and his family.

In September 2005, the SSA determined that Brown improperly applied for Medicare Part B benefits and refunded him the supplemental premiums that he had been paying since 1992. Brown argues that under the Medicare Secondary Payer statute ("MSP"), the Defendants are obligated to repay Medicare for these medical expenses that

3

had been conditionally paid by Medicare but should have been paid by the company's health plan.[1]  He first notified U.S. Steel of the SSA's determination on June 1, 2006.

On June 8, 2010, Brown filed suit against the Defendants seeking to recover the amount allegedly owed by the Defendants.[2]  On August 26, 2010, Defendants filed a motion to dismiss or, in the alternative, a motion for summary judgment.  In support of the motion, Defendants filed an affidavit from Michael Stehura, the Director of the Pension and Retiree Benefits Administration for the Pension Fund, with accompanying exhibits.  On August 27, 2010, the District Court entered an order stating that the motion may be treated as a motion for summary judgment.  On September 10, 2010, Brown submitted his response opposing both the conversion of the motion as well as summary

---

[1] Under the MSP, Medicare may make conditional payments for covered services "if a primary plan . . . has not made . . . payment with respect to such item or services promptly."  42 U.S.C. § 1395y(b)(2)(B)(i).  However, a primary plan must reimburse Medicare for such conditional payments "if it is demonstrated that such primary plan has or had the responsibility to make payment."  *Id.*

[2] The Defendants argued in their motion for summary judgment that Brown lacked standing to bring suit because he did not suffer any injury when Medicare is not currently seeking reimbursement from Brown.  We agree with the District Court that Brown has standing to sue because the June 1, 2009 letter from the Medicare Secondary Payer Recovery Contractor notified Brown that the "conditional payments are subject to reimbursement to Medicare from proceeds received pursuant to a workers' compensation settlement . . . [and they] are still investigating this matter to obtain any other outstanding Medicare conditional payments."  The imminent injury from unresolved conditional payments made on his behalf is sufficient to give Brown standing. *See Friends of the Earth v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 180 (2000) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).

judgment. On October 29, 2010, the District Court converted the Defendants' motion to a motion for summary judgment and granted it. Brown timely appealed.

## II.

The District Court had subject matter jurisdiction under 42 U.S.C. § 1395y(b)(3)(A) and 28 U.S.C. § 1331. We have appellate jurisdiction under 28 U.S.C. § 1291. We exercise plenary review when deciding whether the District Court erred in converting a motion to dismiss into a motion for summary judgment. *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999). We review a claim that the District Court prematurely granted summary judgment for abuse of discretion. *Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 510 (3d Cir. 1994) (citation omitted). Our review of the District Court's grant of summary judgment is plenary, and in making this determination, we view the facts in the light most favorable to the nonmoving party. *Norfolk S. Ry. Co. v. Basell U.S.A. Inc.*, 512 F.3d 86, 91 (3d Cir. 2008).

## III.

Brown first submits that the District Court erred in converting the Defendants' motion to dismiss into a motion for summary judgment. Under Rule 12(d) of the Federal Rules of Civil Procedure, a district court properly converts a motion to dismiss into a motion for summary judgment if (1) the materials submitted go outside of the pleadings and are not excluded by the court and (2) the parties had adequate notice of the district court's intention to convert. *See In re Rockefeller*, 184 F.3d at 287. The motion was

properly converted here. First, the parties submitted affidavits and documents, such as the affidavit of Michael Stehura, that were not excluded by the District Court, which required conversion of the motion to dismiss because they went beyond the pleadings. Second, on August 27, 2010, the District Court entered an order advising the parties that the motion may be treated as a motion for summary judgment and notified Brown to file an appropriate response, including possible affidavits, in opposition to the motion by September 10, 2010. This provided adequate notice. Thus, the District Court properly converted the motion to dismiss into a motion for summary judgment.

Brown next submits that the District Court abused its discretion in granting the motion before giving Brown a reasonable opportunity for discovery. If a motion to dismiss is treated as a motion for summary judgment, then the "parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). Brown asserts that this "reasonable opportunity to present all materials" includes the opportunity to engage in discovery to obtain the pertinent information. Brown is correct that we are "obliged to give a party opposing summary judgment an adequate opportunity to obtain discovery." *Dowling v. City of Phila.*, 855 F.2d 136, 139 (3d Cir. 1988) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). But if a party believes it needs additional time for discovery, it must follow the procedure outlined in Rule 56(f) of the Federal Rules of Civil Procedure. *Id.* "This court has interpreted Rule 56(f) as imposing a requirement that a party seeking further discovery in response to a

6

summary judgment motion submit an affidavit specifying . . . what particular information is sought; how, if uncovered, it would preclude summary judgment; and why it has not previously been obtained." *Id.* at 139-40 (citing *Hancock Indus. v. Schaeffer*, 811 F.2d 225, 229-30 (3d Cir. 1987)). We reject Brown's argument because his failure to file a Rule 56(f) affidavit is fatal to his claim of insufficient discovery. *See Bradley v. United States*, 299 F.3d 197, 207 (3d Cir. 2002) (citation omitted).

Brown contends that he constructively complied with Rule 56(f) when he filed an affidavit in response to the Defendants' motion stating, "It is my belief that there are many additional records maintained by the Defendants (personnel, workers compensation, payroll, health insurance, disability pension, benefits) that will confirm and support my contention that I was an 'active employee' of U.S. Steel . . . even though I was disabled. It is also my belief that there are witnesses still employed at U.S. Steel who will corroborate my position if subpoenaed to testify." There is a strong presumption against finding constructive compliance. *Bradley*, 299 F.3d at 207. And even if we were to find constructive compliance, Brown did not specify what particular information he was seeking. *See Dowling*, 855 F.2d at 140. Merely stating that the Defendants have "additional records" and employs potentially helpful witnesses was insufficient to identify the information Brown sought in discovery. Moreover, he failed to state why the information sought had not previously been obtained. *See id.* Therefore,

7

the District Court did not abuse its discretion in granting the Defendants' motion for summary judgment without allowing Brown to seek additional discovery.

Next, Brown submits that the District Court abused its discretion under Federal Rule of Civil Procedure 56(d) by not deferring its consideration of the summary judgment motion. Rule 56(d) states, "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it, (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d). He argues that "where the facts are in possession of the moving party[,] a continuance of a motion for summary judgment for purposes of discovery should be granted almost as a matter of course." *Costlow v. United States*, 552 F.2d 560, 564, (3d Cir. 1977) (citation omitted). The District Court did not abuse its discretion because under Rule 56(d), Brown failed to adequately state the specific reasons he could not present facts essential to justify his position. His unsubstantiated belief that Defendants have "additional records" and employ potentially helpful witnesses was insufficient to compel the District Court to exercise its discretion under Rule 56(d).

Finally, Brown submits that even without further discovery, the District Court erred in granting the summary judgment motion because there are genuine issues of material fact regarding his employment status. The District Court held that based on the

record, Brown could not prevail on his MSP claim because he is a retiree, not an active employee, and MSP only applies to active employees. We agree with the District Court.

There is no genuine issue as to Brown's employment status at the time Medicare made the relevant payments. Stehura's affidavit states that Brown elected to retire from U.S. Steel, effective June 30, 1986. Brown began receiving retirement benefits under a "permanent incapacity" class of retirement, covered by the 1980 Pension Agreement, on July 1, 1986. Under section 5 of the 1980 Pension Agreement, Brown's retirement ended his continuous service. There is no evidence that his retirement status ever changed.

We need not entertain Brown's argument that Stehura lacked personal knowledge regarding Brown's employment status because this issue was never raised in the District Court. *See Gleason v. Norwest Mortg., Inc.*, 243 F.3d 130, 142 (3d Cir. 2001). Even if we were to entertain this claim, we must reject it. According to his affidavit, as the Director of the Pension and Retiree Benefits Administration for U.S. Steel, Stehura had personal knowledge of the retirement benefits that [were] being provided to . . . Brown" and had "access to his file, which [he] . . . reviewed."

We also reject Brown's argument that there are three pieces of evidence indicating he was an active employee. First, in a letter sent to the SSA on March 10, 1992, J.P. Finan, the Manager of Retiree Benefits for the Pension Fund, wrote "not applicable" in response to the question "Date Employment Terminated." Brown argues that this indicates he was not regarded as a retiree. But in the preceding response, Finan also

9

wrote that Brown's employer group health coverage was "still in effect" because "there is no reason [Brown's] coverage would be terminated. As [Brown] is Medicare eligible[,] his retiree health coverage is secondary to Medicare." Read in context, Finan's responses demonstrate that Brown received retiree health coverage and the Pension Fund treated him as a retiree.

Second, a July 5, 1994 letter from Robert T. Wilson, Manager of Workers' Compensation for U.S. Steel, attempts to limit the company's liability for Brown's workers' compensation claim and states that "establishment of work capacity will undoubtedly impact" the other benefits he receives. Brown alleges that this is inconsistent with the claim that he had retired in 1986. However, under Pennsylvania law, workers' compensation benefits continue after retirement when the claimant shows that he intends to seek employment after retirement. *See Armstrong World Indus. v. Workers' Comp. Appeal Bd. (Evans)*, 703 A.2d 90, 91 (Pa. Commw. Ct. 1997). Thus, this statement regarding Brown's potential future employment fails to prove that U.S. Steel did not regard him as a retiree.

Third, the SSA's September 26, 2005 letter notified Brown that it was reimbursing him for past Supplemental Medical Insurance Premiums because he had been "improperly advised to apply for that coverage in March 1992." Other than pointing to this language, Brown fails to show how this letter indicates there was a dispute as to his employment status. The fact that Brown was not eligible for Medicare coverage does not

10

prove that he was an active employee of U.S. Steel.  Thus, the evidence fails to demonstrate a genuine issue of material fact sufficient to defeat summary judgment.

IV.

For the foregoing reasons, we will affirm the District Court's order.